UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**ANDREA SHERWOOD**
    **Plaintiff,**

vs.                                                    Case No:

**CELEBRITY'S MANAGEMENT COMPANY LLC,
FREDERICK JACOBS AND TAJA JACOBS,
INDIVIDUALLY**
    **Defendant.**
_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, **ANDREA SHERWOOD ("SHERWOOD")**, by and through her undersigned counsel and sues the Defendants, **CELEBRITY'S MANAGEMENT COMPANY ("CELEBRITY"), FREDERICK JACOBS (Mr. JACOBS) and TAJA JACOBS (Mrs. JACOBS), Individually,** and alleges as follows:

### **JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter under 28 U.S.C. §1331.

2. Venue is proper in the United States District Court for the Middle District of Florida under 28 U.S.C. §1391 (b)-(c).

3. At all times material to this Complaint, Plaintiff, **ANDREA SHERWOOD ("SHERWOOD")**, resides in Marion County, Florida and was an employee as defined under 29 U.S.C. § 203 (e) of Defendant **CELEBRITY**.

4. At all times material to this Complaint, Defendant**, CELEBRITY'S** principal place of business is in Ocala, Florida, and is licensed to conduct business in Florida and is defined as an emloyer under 29 U.S.C. § 203 (d).

1

5. At all times material to this Complaint, Plaintiff, **Mr. JACOBS**, resides in Marion County, Florida.

6. At all times material to this Complaint, Plaintiff, **Ms. JACOBS**, resides in Marion County, Florida.

7. This case involves the Defendants' violation of the Fair Labor Standards Act (FLSA) 29 U.S.C. §215 (a)(3) which prohibits retaliation directed against **SHERWOOD** for bringing FLSA violations to her employer's attention.

8. The FLSA provides for individual personal liability as well for those corporate officers, directors and managers who have control over the employees hiring and firing, methods and rate of employee compensation, supervising work schedules and/or conditions of employment. Hence, individual Defendants who had such control over the Plaintiff have been included in this suit.

## FACTUAL ALLEGATIONS

9. On or about August 27, 2022, Plaintiff, **SHERWOOD** began working as an hourly paid employee for Defendant, Celebrity's Management Company as a waitress making seven dollars per hour.

10. **Mr**. and **Mrs**. **JACOBS** had direct control over the Plaintiff in all employment matters, including hiring, firing and compensation decisions.

11. **SHERWOOD** was an asset to **CELEBRITY** as she would pick up shifts for other employees of the company when they didn't show up for their shifts.

12. In August, 2022, **SHERWOOD** received her first paycheck from **CELEBRITY** she noticed that she was not paid for the amount of time she actually worked but she did not mention it to anyone as she thought it was a mistake.

13. **SHERWOOD** received her second paycheck and noticed that there were discrepancies and informed the General Manager, Mr. James Gilliam that she was not being paid for appropriate time she worked. Mr. Gilliam informed her that it was only a small discrepancy and but he would speak with **CELEBRITY** owners, **Mr**. and **Mrs. JACOBS**, the individual Defendants, and the human resource department to figure out why **SHERWOOD** was not being paid properly.

14. During her second week of employment, **SHERWOOD** received a negative email about **CELEBRITY** and how the owners were mistreating and not paying employees in accordance with the law.

15. **SHERWOOD** witnessed what appeared to be sexual harassment of another employee on the porch of **CELEBRITY**'s brick and mortar operation in Ocala, FL, which was also recorded on the security cameras. Allegedly, after this encounter, security cameras were removed from the premises.

16. In an attempt to stop **SHERWOOD** from speaking about the incident, **Mrs**. **JACOBS** offered her a shift lead position which she accepted with a pay raise to ten (10) dollars an hour when **SHERWOOD** performed management duties.

17. **SHERWOOD** spoke with **Mrs**. **JACOBS** about her promotion paperwork. **Mrs**. **JACOBS** informed her that Ms. Dee Dixon of HR would be taking care of it. **SHERWOOD** never questioned this as she trusted Ms. **JACOBS**.

18. **SHERWOOD** continued working her normal hours as a waitress and performing management duties. **SHERWOOD** also worked multiple overtime shifts that were not compensated.

19. Mandatory meetings were held for all employees on Mondays. During the time of **SHERWOOD'**s employment and after each weekly meeting, employees were required to reset the restaurant for dinner service s while not being compensated for their required meeting attendance and work performed during resets.

20. Approximately one week prior to her termination**, SHERWOOD** approached Ms. Dee Dixon in Human Resources and complained that she and other employees were not being paid for this time and that was illegal. Ms. Dixon told **SHERWOOD** that the meetings and resets were not going to be compensated. Ms. Dixon reported directly to **Mr.** and **Mrs**. **JACOBS**.

21. On or about November 17, 2021, **SHERWOOD** was terminated by Ms. Dixon in retaliation one week after her Fair Labor Standard Act Complaint shortly after she had complained to Ms. Dixon.

22. After being terminated and leaving the **CELEBRITY** facility **Mr**. **JACOBS** approached **SHERWOOD** and stated he could get her another position at the restaurant if her "head game" was good.

23. After her termination **SHERWOOD** received her partial mandatory overtime wages on or about November 19, 2021 and management wages on or about December 31, 2021 via direct deposit by Ms. Dixon after **SHERWOOD** had previously complained of these FLSA violations and after she was terminated.

24. As additional retaliation, after **SHERWOOD's** termination she received a cease and desist letter threatening her about text messages that were not authored by her complaining about the Defendant's unfair practices.

# COUNT I
# RETALITORY TERMINATION UNDER FLSA IN
# VIOLATION OF 29 U.S.C. §215 (a)(3) AGAINST ALL OF THE DEFENDANTS

25. Plaintiff restates and realleges the factual allegations in paragraphs 9 through 24.

26. **CELEBRITY** is an employer under 29 U.S.C. § 203 (d) and the FLSA applies to its restaurant business the FLSA prohibits an employer from having an employee work off the clock for hours worked and prohibits an employer from not paying time and a half for hours worked over forty in a work week. Both individual Defendants had control over the Plaintiff's hiring, firing and compensation practices.

27. **SHERWOOD** complained of both of the FLSA violations listed above in the factual allegations to management and was terminated as a proximate cause shortly after her FLSA complaints.

28. 29 U.S.C. § 203(a)(3) makes it illegal for an employer to otherwise discriminate or terminate an employee because she filed any complaint pertaining to an FLSA violation.

29. Both individual Defendants were employers of **SHERWOOD** under 29 U.S.C. § 203 (d) and were involved in the decision to terminate her along with Ms. Dixon in HR after receiving notice of **SHERWOOD**'s FLSA complaints.

30. The acts of the Defendants in the case were intentional, malicious, and/ or with wanton reckless disregard of the law.

31. As a proximate result of the Defendants' actions, the Plaintiff was damaged.

   **WHEREFORE**, the Plaintiff respectfully requests economic damages, liquidated damages under the FLSA, emotional distress damages, attorney fees and costs.

**DEMAND FOR JURY TRIAL**

The Plaintiff demands a trial by jury on all issues so triable.


Dated: September 19, 2022  **FREDERICK C. MORELLO, P.A.**
**/s/ *Frederick C. Morello***
**Frederick C. Morello, Esquire**
**Florida Bar No.: 0714933**
**111 N. Frederick Avenue, 2nd Floor**
**Daytona Beach, FL 32114**
**(386)252-0754 Fax (386) 252-0921**
**Primary Email: live2freefly@gmail.com**
**kristina@fcmesq.com, amber@fcmesq.com**
**adminasst@fcmesq.com**
**Counsel for Plaintiff**